668 So.2d 1082 (1996)
J.O.S., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 95-3658.
District Court of Appeal of Florida, First District.
March 5, 1996.
*1083 Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Daniel A. David, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, Judge.
In this appeal from a juvenile delinquency proceeding, appellant seeks review of an order of disposition adjudicating him a delinquent child, placing him on community control and directing that he pay restitution of $1,092.00. More particularly, he argues that, because the adjudication of delinquency was based upon a finding that he had committed what would have been the offense of second-degree misdemeanor criminal mischief had he been an adult, the maximum amount of restitution that the trial court could impose as a condition of community control is $200.00. We disagree and, accordingly, affirm.
The relevant facts are not in dispute. The state filed a petition charging that appellant had committed what would be the offense of first-degree misdemeanor criminal mischief if appellant were an adultthat is, it charged that appellant had "willfully and maliciously injure[d] or damage[d] ... personal property belonging to another," and that "the damage to such property [was] greater than $200 but less than $1,000." § 806.13(1)(b)2, Fla.Stat. (1993). During the adjudicatory hearing, the state offered no evidence regarding the dollar value of the damage for which appellant was alleged to be responsible. At the conclusion of the hearing, the trial court found that the evidence was sufficient to establish that appellant had committed what would be the offense of criminal mischief were he an adult, because he had deliberately thrown a baseball through the window of the victim's truck. However, the trial court correctly noted that, because no evidence had been presented regarding the dollar value of the damage for which appellant was responsible, he could only be found to have committed what would be the offense of second-degree misdemeanor criminal mischiefthat is, criminal mischief involving damage of $200.00 or less. § 806.13(1)(b)1, Fla.Stat. (1993). See Valdes v. State, 510 So.2d 631 (Fla. 3d DCA 1987) (offense of criminal mischief established by proof of willful or malicious damage to another's property; dollar value of damage relevant only to degree of offense).
At a subsequent restitution hearing, the victim testified that it had cost $842.00 to replace the broken window, and an additional $250.00 to replace carpet that had been damaged by rain before the window could be replaced. Over objection by appellant's counsel that restitution could not exceed $200.00 because appellant had been found only to have committed what would be second-degree misdemeanor criminal mischief, the trial court ordered appellant to pay $1,092.00 in restitution. This appeal follows.
We begin our analysis by reference to section 39.054(1)(f), Florida Statutes (Supp. 1994), which provides, in relevant part, that "[t]he court that has jurisdiction of an adjudicated delinquent child may ... [among other things] order the child to make restitution in money, through a promissory note cosigned by the child's parent or guardian, or in kind for any damage or loss caused by the child's offense in a reasonable amount or manner to be determined by the court." The supreme court construed a substantively indistinguishable predecessor to this provision in J.S.H. v. State, 472 So.2d 737 (Fla.1985).
In J.S.H., the juvenile was found to have committed what would have been grand theft had he been an adult. He was placed on community control, and ordered to pay *1084 $775.00 in restitution. On appeal, he argued that his share of the value of the sole item that had been stolen and not returned amounted to only $25.00, the remaining $750.00 being attributable to damage done to the boat from which the item had been stolen. He contended that, because he had been charged only with grand theft (and not with criminal mischief), the damage to the boat had not "been caused by his offense," as the statute required before restitution could be ordered. Therefore, he claimed that he could be ordered to pay only $25.00. The supreme court disagreed. It held that "[i]t is not necessary that the offense charged describe the damage done in order to support a restitution order[,] but only that the damage bear a significant relationship to the convicted offense." Id. at 738. Concluding that the damage to the victim's boat bore such "a significant relationship to the convicted offense" of grand theft because it had been done to facilitate the theft, the court affirmed. Accord J.M. v. State, 658 So.2d 1128 (Fla. 2d DCA 1995).
Clearly, the damage for which restitution was awarded in this case satisfies the test announced in J.S.H. It would seem that such a conclusion should mark the end of our analysis. However, appellant argues that, because the dollar value of the damage "is an essential element of the crime" of criminal mischief, the state is required to establish the amount of the damage at the adjudicatory hearing, to the exclusion of all reasonable doubt, and may not establish the amount at a subsequent restitution hearing. Appellant concedes that there are no cases directly on point, and our research has failed to find any.
There is one case which, in the context of a restitution order imposed upon an adult found to have committed a criminal offense, offers some support for appellant's position. In Peralta v. State, 596 So.2d 1220 (Fla. 5th DCA 1992), the defendant had been charged in two counts with the grand theft of an auto and the grand theft of items taken from the auto. He entered into a plea agreement, pursuant to which the state agreed to dismiss the grand-theft auto charge and to permit him to plead guilty to petit theft in return for the payment of restitution in an amount to be set by the trial court. At the restitution hearing, the evidence established that the victim's damage as a result of the theft was at least $2,575.93. The defendant argued that, because the maximum value of property taken could not exceed $300.00 and still constitute petit theft, he could not be ordered to pay more than $300.00 in restitution. The trial court disagreed, and ordered that the defendant pay $2,575.93. On appeal, the district court reversed. Without explanation or citation, it held that, "because here the convicted offense was theft of items having a value of $300 or less, the maximum value of the items for which defendant can be ordered to pay restitution is also $300." Id. at 1221. It then held, further, that, in addition to the $300.00, the defendant could be ordered to pay as restitution damage "indirectly" attributable to the theft, "including damage done to the vehicle in effecting the theft of the items," and remanded for a determination of the amount attributable to such damage. Id. However, as appellant candidly concedes, it would appear that Peralta has since been overruled.
In Hebert v. State, 614 So.2d 493 (Fla. 1993), the supreme court was presented with a fact situation substantively indistinguishable from that in Peralta. The court concluded that, by entering into a plea agreement which leaves to the trial court's discretion the amount of restitution, a defendant waives any objection to the amount of restitution, absent a clear showing that the trial court abused its discretion in setting the amount. More particularly, it answered in the affirmative the question, "When a defendant pleads guilty to an offense defined by a maximum dollar value, can court-ordered restitution exceed that amount when the voluntary plea agreement expressly leaves the amount of restitution to the discretion of the trial court?" Id. at 494. Although Peralta was not mentioned by the court, it is difficult to imagine how it might have any continued vitality after Hebert. Of greater interest for our purposes is that the court did not address the issue presented in a case such as this, where there is no agreement to pay an amount of restitution that exceeds the "maximum dollar value" of the offense involved. Rather, it "reserve[d] *1085 judgment as to whether a similar result would be mandated in the absence of an express agreement" to pay an amount to be set by the trial court. Id.
We believe that appellant's argument is based upon a misperception regarding the principal purpose of restitution. The word "restitution" is generally understood as being synonymous with "restoration" and "indemnification." E.g., THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1641 (2d ed. unabridged 1987); BLACK'S LAW DICTIONARY 1313 (6th ed. 1990). Absent some clear indication of a contrary intent, we must assume that the legislature had this commonly understood meaning of "restitution" in mind when it used the word. E.g., Green v. State, 604 So.2d 471 (Fla.1992). Accordingly, we must conclude that the principal purpose of restitution is to make victims of crime whole by restoring to them the value of that which they have lost as a result of the crime, rather than to punish the wrongdoer. Such a conclusion finds support in the language used by the legislature in a section of the Florida Criminal Code titled "Restitution":

In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode....
§ 775.089(1)(a), Fla.Stat. (Supp.1994) (emphasis added).
Assuming the principal purpose of restitution to be to restore to victims of crime the value of that which they have lost as a result of the crime, rather than to punish the wrongdoer, we can perceive no good reason why the amount should be limited arbitrarily by the maximum dollar value of the offense which a defendant is found to have committed. In particular, we note that the state is obliged to establish the amount of restitution only by the greater weight of the evidence, rather than to the exclusion of all reasonable doubt. § 775.089(7), Fla.Stat. (Supp.1994). See, e.g., Winborn v. State, 625 So.2d 977 (Fla. 2d DCA 1993); Touchton v. State, 616 So.2d 1124 (Fla. 1st DCA 1993). We can conceive of cases in which the amount of the victim's loss as a result of the crime could not, for any number of reasons, be established to the exclusion of all reasonable doubt at the time of the trial, but could be established by the greater weight of the evidence at a subsequent restitution hearing. It seems to us that the position argued by appellant would require proof of the amount of a victim's loss to the exclusion of all reasonable doubt during the trial in cases where the offense charged is defined by reference to a dollar amount. Such a result would conflict with the clearly expressed legislative intent that the amount of restitution need be established only by the greater weight of the evidence. Accordingly, we are unable to accept appellant's argument and, instead, affirm the trial court's order. However, because this appeal raises the issue expressly left unanswered in Hebert, and because the issue is likely to continue to arise in the future, we certify the following question to the supreme court, as one of great public importance:
WHETHER, IN THE ABSENCE OF ANY AGREEMENT, RESTITUTION MAY BE ORDERED IN AN AMOUNT GREATER THAN THE MAXIMUM DOLLAR VALUE DEFINING THE OFFENSE FOR WHICH A CHILD IS ADJUDICATED A DELINQUENT CHILD AS LONG AS THE AMOUNT IS SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE?
AFFIRMED.
ERVIN and MICKLE, JJ., concur.